[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY CUSTODY AND SUPPORT
These are custody actions brought by the parents of a three year old child, Felicia C. Mayberry, born March 5, 1989. The father is 66 years of age and in apparent good health. He lives in a home owned by his grown sons Ronald, Calvin and Melvin together with a fourth son William, IV (Pete), all over thirty years of age. The father purchased the home in 1981 placing the title immediately in his three sons' names, they to pay the mortgage, insurance and taxes. The father occupies the first floor consisting of a living room, dining room, kitchen, half bath and bedroom. Three of the sons occupy bedrooms on the second floor and the fourth occupies a bedroom in the basement.
The father is retired, having worked two jobs most of his adult life: as a policeman for the Town of Norwalk for 24 years retiring in 1977 and for Plastic Products in Norwalk. He was 51 years of age when he retired. In 1983 he fell off a ladder and broke his arm and his leg. He has been on Social CT Page 10221 Security disability since that time, although there was no evidence offered as to the extent or nature of that disability. He receives $800.00 per month from Social Security and $385.00 per month for Felecia.
The mother is 43 years of age. She has a nine year old child, Christopher, by a previous relationship. In September, 1987 she was living with a man who was abusing her. She also had a drug and alcohol problem. The father met her prior to that time and told her he would help her if she ever decided she needed help. One night she called him and he went and picked her up. He brought her to his home, the idea being that he would assist in her rehabilitation, find an apartment for her when she got on her feet and help her to find a job. She testified that after that time she has not consumed drugs or alcohol.
In March, 1989 Felecia was born. Prior to that time, the mother first worked at Bradlees for a year and then obtained a job working for IBM in Norwalk as a secretary where she has worked for four years. She continues in that position. Since she worked during the day, the father took care of Felecia during the day and the mother took care of her on weekends. The mother was hospitalized in January and February of this year, and the father was hospitalized in May, June and July. While the father was in the hospital, his son, William IV (Pete) arranged his work so that he could care for Felecia during the day.
The parties separated in July, 1992. The son Melvin reported to his father that he saw the mother smoking cocaine. The child Felecia reported to her father that she and her mother were in the bathroom together when she saw her mother stick something up her nose causing her nose to bleed. The father assumed that was coke ingestion and with that plus Melvin's report of her smoking coke, he demanded that she leave the house. The mother left on July 14. The family would not allow her to take Felecia. The mother returned the following day with the police, and the police insisted that she be permitted to take Felecia with her. She then went to live with her mother in Norwalk.
The mother now has her own apartment in Norwalk, and Felecia attends the Parkway Nursery in Norwalk Monday through Friday from 7:30 in the morning to 5:30 in the evening. She is CT Page 10222 picked up in the evening by her maternal grandmother, Ms Cherry, and then the mother picks Felecia up at the maternal grandmother's home between 5:30 and 5:30 p.m. The mother says that Felecia loves her teachers and is very happy.
The mother testified that she bought Felecia's food, clothing, toys, walker, playpen, crib and diapers. The father testified that he bought Felecia the essentials: diapers, Pampers, shirts, etc. and bought the food. Unfortunately, the testimony regarding the purchase of essentials for Felecia was diametrically opposed.
It is clear from the testimony that both parents love Felecia very much. It is also clear that both parents have been the primary caretakers of this child. While the father, Mr. Mayberry, has provided loving care for Felecia, it is clear to the court that the mother has been much more active with her and has provided the greatest stimulation for the child.
The court is concerned should there be a drug problem. The court is concerned, also, regarding the incidents described by the father and at least one of the sons suggesting there may be physical abuse. On both of these issues, the court has accepted the plaintiff's testimony denying that there has been any involvement with drugs and denying any physical abuse. It is because of the court's concerns, however, that the court has ordered a custody investigation.
Orders regarding custody are governed by 46b-56 of the Connecticut General Statutes. Section 46b-56 provides, in pertinent part, as follows:
 [T]he court may at any time make or modify any proper order regarding . . . custody and visitation if it has jurisdiction . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable.
Connecticut General Statutes 46b-56 (a). "The paramount concern in ordering custody is the best interest of the child." Connecticut General Statutes 46b-56 (b); Hall v. Hall,186 Conn. 118, 121 (1982).
The court finds as follows: CT Page 10223
1. Each parent has demonstrated parenting skills.
2. Each parent has enjoyed a good and loving relationship with Felecia.
3. Each parent has demonstrated a willingness to facilitate visitations by the other parent.
4. The mother has the greater flexibility to best serve the psychological development and growth of Felecia.
5. The father has more time to devote to Felecia on a day-to-day basis at the present time.
6. The mother is more willing and able to address medical and educational problems of Felecia and to take appropriate steps to have them treated and corrected.
A factor to be considered is the consistency in parenting and lifestyle insofar as these factors might affect the child's growth, development and well being. Seymour v. Seymour, 180 Conn. 705, 711 (1980). With this in mind, query the appropriateness of a three and a half year old girl being raised in a household of men, brothers in their 30's and a father in his 60's? This is an issue that Family Relations may explore further in its study.
The court finds that it is presently in Felecia's best interest to be in the custody of her mother and grants sole custody to the mother pendente lite.
It would appear that it would make great sense for the father to have some week day visitation. While the court recognizes that Felecia is doing well in her nursery school, it is more "nursery school" at this time rather than "preschool." The court believes it to be in Felecia's best interest to be with her Dad perhaps two weekday afternoons. This was not explored during the trial of this matter. The court orders the parties to return to court for further consideration of this question in Felecia's best interest.
The father shall have visitation as follows:
a. Wednesday, November 18 from maternal grandmother's home at CT Page 10224 5:45 p.m. to 7:30 p.m. (Mother is to pick up Felecia at the father's home upon termination of visitation.)
b. Saturday, November 21, noon to 5:30 p.m. (Mother is to deliver Felecia to the father's home and the father is to return Felecia to the mother's home.)
c. Wednesday, November 25, from school to 7:30 p.m. (Mother will pick up Felecia at the father's home.)
d. Thursday, November 26 (Thanksgiving Day), Felecia with her mother.
e. Friday, November 27, from school to Saturday, November 28, at noon. (Father to return Felecia to her mother's residence.)
f. Thereafter, every Wednesday from 5:30 p.m. to 7:30 p.m. (Father to pick up Felecia at school and mother to pick up Felecia from father's home.)
g. Friday, December 11 at 5:30 p.m. to Sunday at 7:30 p.m. (Father to pick up Felecia at school and mother to pick up Felecia from father's home.)
h. Christmas Eve, December 24, Felecia with her mother.
i. Christmas Day, December 25, Felecia with her father from noon to Sunday, December 27 at 7:30. (Father to pick up child from mother's residence. Mother to pick up child at father's residence.)
j. Thereafter, father's weekend visitations shall be every other weekend from school at 5:30 p.m. on Friday to Sunday evening at 7:30 p.m. Father to pick up Felecia at school and mother to pick up Felecia at father's residence at end of visitation.
k. The Thanksgiving holiday commencing 1993 shall be from Wednesday after school or day care until Sunday at 7:30 p.m. shall be spent with the father in odd numbered years and with the mother in even numbered years.
l. Commencing 1993, the Christmas holiday shall be divided into two segments. The first segment to commence after CT Page 10225 school or day care on Christmas Eve to noon on Christmas Day and the second segment to commence at noon on Christmas Day until 7:30 p.m. Christmas Day. In even numbered years the first segment shall be with the father and the second segment shall be with the mother. In odd numbered years the first segment shall be with the mother and the second segment shall be with the father.
m. Easter Sunday shall be with the mother in even numbered years and with the father in odd numbered years. Good Friday, if it is a holiday for the mother, shall be with the father in even numbered years and with the mother in odd numbered years.
n. Father's Day shall be with the father; Mother's Day with the mother.
o. Memorial Day shall be with the father in even numbered years and with the mother in odd numbered years.
p. Independence Day shall be with the father in odd numbered years and with the mother in even numbered years.
q. Labor day weekend shall be with the mother in even numbered years and with the father in odd numbered years.
r. All other holidays shall be alternated. If the father's holiday or any holiday other than those set forth above falls on a Friday or a Monday and it is the father's weekend visitation, the father's visitation shall be from Thursday after school or day care to Sunday at 7:30 or Friday after school or day care to Monday at 7:30 p.m., as the case may be. If it be a weekend with both the Friday and the Monday as holidays, it shall be treated as if it were a Friday holiday only.
s. The parties shall divide Felecia's birthday if it is on a weekend, or if a weekday, the father's visitation shall be from after school to 7:30 p.m.
Each parent shall keep the other parent advised of Felecia's well being while with the other parent.
Neither parent shall criticize the other parent to Felecia. CT Page 10226
Felecia shall be permitted to call the other parent at any time. Telephone charges shall not be reversed, i.e. collect calls, to the parent being called.
The mother shall maintain such medical insurance as she has available through her employment for Felecia's benefit. Any uninsured or unreimbursed medical or dental expenses for Felecia shall be divided equally between the parties.
The mother shall be permitted to obtain those toys of Felecia from the father's home that she chooses. It should be remembered, however, that some of her favorite toys must remain at the father's home. As to some of the toys, it may be necessary to have duplicate toys, one at each parent's home.
The father shall withdraw the sum of $1,347.50 (Social Security benefits for one half of July, August, September and October) and pay this amount to the mother by way of past support for those months.
In determining the issue of support the court has considered the factors of 46b-84 of the General Statutes and the child support guidelines. Since the father is receiving Social Security benefits for the child, the court finds it is inappropriate to apply the child support guidelines in this case and deviates from the guidelines in the best interest of the child. For so long as the father continues to receive Social Security benefits for Felecia, he shall pay such amount to the mother by way of support immediately upon receipt of such sum ($385.00 per month at present). The father shall take those steps necessary to have future benefits paid directly to the mother.
EDGAR W. BASSICK, III, JUDGE